**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **MICHAEL W. COTTEN** | § | |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | **Case No. 24-230** |
| | § | |
| **TEMPLE COLLEGE, CHRISTINA** | § | |
| **PONCE, IN HER OFFICIAL CAPACITY,** | § | |
| **JOHN STEVENS, IN HIS OFFICIAL** | § | |
| **CAPACITY, and JAMIE ARNOLD, IN** | § | |
| **HER OFFICIAL CAPACITY,** | § | |
| *Defendant* | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

Plaintiff, Michael Cotten, files this, his Original Complaint against Defendant, Temple College, Dr. Christina Ponce, in her official capacity as Temple College President, John Stevens, in his official capacity as Dean of the Liberal Arts Department, and Dr. Jamie Arnold, in her official capacity as the Chair of the History Department at Temple College, and would respectfully show the Court as follows:

### I.     INTRODUCTION

This is an action brought by Plaintiff, Michael Cotten, seeking damages from Defendants for violations of Due Process, his First Amendment right to free speech, the Age Discrimination in Employment Act (hereinafter the "ADEA"), other theories under Texas tort and statutory law, and any other causes of action(s) that can be inferred from the facts set forth herein.

1. Plaintiff, Michael Cotten, was a professor at Temple College from August of 2018 through May of 2023.

2. Plaintiff, Michael Cotten's, contract was not renewed for the 2023-2024 academic year without due process and in violation of Federal and State laws against age discrimination and the First Amendment.

## II.     JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III.     PARTIES

5. Plaintiff, Michael W. Cotten (hereinafter "Cotten" or "Professor Cotten"), was a resident of Texas at all times relevant to this matter.

6. Defendant, Temple College, is a publicly funded college with its principal administrative office address at 2600 South First St., Temple, Bell County, Texas 76504, and is authorized to do business in Texas.  Temple may be served through its registered agent, President, Dr. Christina Ponce.

7. Defendant, Dr. Christina Ponce (hereinafter, "Ponce," "Dr. Ponce," or "President Ponce"), is the President of Temple College and may be served at the Temple College administrative office address at 2600 South First St., Temple, Bell County, Texas 76504.

8. Defendant, John Stevens (hereinafter, "Stevens" or "Dean Stevens"), is the Dean of the Liberal Arts Department at Temple College and may be served at the Temple College administrative office address at 2600 South First St., Temple, Bell County, Texas 76504.

9. Defendant Dr. Jamie Arnold (hereinafter, "Arnold," "Dr. Arnold," or "Chair Arnold") is the Chair of the History Department at Temple College and may be served at the Temple College administrative office address at 2600 South First St., Temple, Bell County, Texas 76504.

## IV.  FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

10. Temple College is a Texas community college with campuses in Temple, Texas; Hutto, Texas; and Taylor, Texas. In addition to serving traditional community college students, Temple College provides dual credit classes in conjunction with the Taylor Independent School District (hereinafter, "Taylor ISD"). Upon information and belief, Temple College receives significant financial compensation from this arrangement with the Taylor ISD and is interested in continuing to work with the Taylor ISD in this manner.

11. Professor Cotten was hired by Temple College on, or about, August 20, 2018. His initial appointment was as a full-time, tenure-track, faculty member and he was hired to teach history. Professor Cotten continued to teach as a full-time, tenure-track, faculty member for Temple College until he was denied tenure and, subsequently, his contract was not renewed. *See*, Exhibit 1, Hire Letter, a true and correct copy of which is attached and incorporated herein by reference.

12. Between the Fall 2018 semester and the Spring 2022 semester Professor Cotten taught classes such as History 1301 (United States History I), 1302 (United States History II), and 2311 (Western Civilization I) for Temple College. These were core curriculum, 3 credit hour classes, covering: (a) "[a] survey of the social, political, economic, cultural and intellectual history of the United States" from the pre-Columbian era through the present; and (b) "[a]

survey of the social, political, economic, cultural, religious, and intellectual history of Europe and the Mediterranean from human origins to the 17th century." *See*, Exhibit 2, Summary of Courses Taught, a true and correct copy of which is attached and incorporated herein by reference.

13. Professor Cotten had high standards for the students in his classes and believed that they could meet those standards if they regularly attended classes and applied themselves to the assignments.

14. During these years, Professor Cotten had a collegial relationship with his department head and frequently sought her advice regarding how to better teach, including questions regarding how to respond to students plagiarizing in their assignments, students missing classes, and other fundamental teaching concerns. *See*, Exhibit 3, Redacted Emails between Cotten and Arnold, a true and correct copy of which is attached and incorporated herein by reference. In these conversations Dr. Arnold responded to Professor Cotten with comments such as:

> "Thank you for being someone who embraces high standards. It is best for the students and ultimately the college." *See*, Exhibit 3 at 3.

> "Thank you so much for all of your hard work and flexibility this year. You did a great job and are very much appreciated." *See*, Exhibit 4, Faculty Evaluation Email, a true and correct copy of which is attached and incorporated herein by reference.

15. During those years, Professor Cotten also received regular evaluations of the classes he was teaching. The student evaluations were generally positive, and the evaluations completed by his department chair included narrative comments such as:

> Section V: Observation Summary:
> This course was very well-organized with reading, PowerPoints, audio lectures, and clear instructions and expectations for assignments. The syllabus was easy to understand with expectations regarding attendance and academic integrity. This course was logical and transparent, with many opportunities to demonstrate mastery of the Foundational Component Areas through the English Bill of Rights, the Navigation Act of 1660, and the Declaration of Independence, to name a few.

Section VI: Comments:
Professor Cotten did a good job teaching US History I to dual credit students and is a passionate, committed instructor. I really appreciated the different modalities he used, including audio lectures, PowerPoints, films, and online discussions. He also posted very useful information for student success, including a plagiarism checker flow chart on the course home page. He has exceptionally high standards for students which will serve them well in the future.

*See*, Exhibit 5, Cotten Evaluation Form Spring 2021, a true and correct copy of which is attached and incorporated herein by reference. And,

Section VI: Comments:
Professor Cotten did a good job teaching US History. He used a variety of modalities and posted useful information for student engagement and success, including a plagiarism checker flow chart on the course home page. He has very high standards, is always receptive to constructive feedback, and is committed to his role as an educator of History.

*See*, Exhibit 6, Cotten Evaluation Form Spring 2022, a true and correct copy of which is attached and incorporated herein by reference.

16. Temple College has a written policy regarding instructors and the granting of tenure which required Professor Cotten to apply for tenure at the end of his 9th semester teaching for Temple College. *See*, Exhibit 7, Tenure Policy (hereinafter, the "Policy"), a true and correct copy of which is attached and incorporated herein by reference. This Policy describes (1) a faculty member's rights and responsibilities under "Pre-tenure status", (2) the "Procedure for Tenure Approval," (3) the "Procedure for Granting Tenure," (4) the "Procedure for Granting Tenure (Pre-Tenure Extended)," (5) the policies relating to "Retaining Tenure," and (6) "Pre- and Post-Tenure Review."

   a. Notably, under Pre-tenure status, the Policy states:

   a. Beginning with appointment to the rank of full-time/tenure-track faculty member, the pre-tenure period for a faculty member shall be ten (10) long consecutive semesters of full-time service (fall and spring semesters) at

Temple College. (Note: Breaks in service for extenuating circumstances such as health issues will be handled on a case-by-case basis.)

b. Full-time faculty members should seek guidance from their respective department chair for any assistance needed during the tenure probationary period.

c. Full-time faculty members who have satisfied the pre-tenure period of ten (10) long consecutive semesters of full-time service at Temple College will be considered for tenure by the Board of Trustees.

d. In some instances, it may be necessary to extend the pre-tenure period for two (2) long semesters. **The President will notify the faculty member in writing by the end of the 9th long semester of service that their pre-tenure period will be extended.**

e. Faculty members who do not apply for tenure by the deadlines specified below or who do not meet the terms of the extended pre-tenure period will be given a notice of non-renewal of contract. (Faculty members in these cases have not met the conditions of their tenure track contract.)

f. **A notice of non-renewal of contract of a non-tenured faculty member shall be given, in writing, by the President no later than February 1, if the contract expires at the end of that academic year**; or if a one-year appointment terminates during an academic year, at least three months in advance of termination.

*See*, id at 1. (emphasis added)

b.   Under the Procedure for Tenure Approval, the Policy states:

The faculty member will submit their formal application for tenure in the first two weeks of the 9th long semester of service.

*See*, id at 1.

c.   Under the Procedure for Granting Approval, the Policy states:

a. The application and portfolio will be submitted to the faculty member's department chair within the first two weeks of the 9th long semester of service.

b. The department chair will have thirty (30) calendar days to review the materials and make a recommendation regarding tenure approval to the division director.

c. The division director will have thirty (30) calendar days to review the materials and make a recommendation regarding tenure approval to the Vice President, Academic Affairs (VPAA).

d. The Vice President, Academic Affairs will have thirty (30) calendar days to review the materials and make a recommendation regarding tenure approval to the President.

e. **By the end of the 9th long semester the faculty member shall be notified that their application for tenure has been accepted for consideration by the President or if their pre-tenure period has been extended.**

f. The President will make a recommendation regarding tenure to the Board of Trustees.

g. Tenure can only be granted by official action of the Board of Trustees.

h. The President's Office shall invite the faculty member to the Board of Trustees meeting at which official action will occur.

*See*, id at 2. (emphasis added)

17. The 9th long semester for Professor Cotten was the Fall 2022 semester. On, or about, May 4, 2022 Professor Cotten sent an initial letter to Dr. Arnold, Department Chair for the Temple College History Department, requesting review for tenure. Subsequently, on, or about, August 10, 2022, in compliance with the Policy's Procedure for Tenure approval and Procedure for Granting Approval as described above, Professor Cotten submitted his Tenure Packet to Dr. Arnold for review and approval. *See*, Exhibit 8, Tenure Packet, a true and correct copy of which is attached and incorporated herein by reference.

18. On, or about, August 30, 2022, Dr. Arnold emailed Professor Cotten and stated, "I wanted to let you know that I signed to approve your tenure packet and gave it to John today." *See*, Exhibit 9 at 1, Arnold Tenure and Upcoming Semester Emails, a true and correct copy of which is attached and incorporated herein by reference. John Stevens is the Dean of the Liberal Arts

program. This was within the 30 days stated, in the Policy, for the review and recommendation by the department chair.

19. Once Professor Cotten's tenure packet was passed to Dean Stevens—presumably about August 30th as stated in Dr. Arnold's email—the communications to Professor Cotten, showing any processing of his tenure application, stopped.

20. A few weeks later, Professor Cotten emailed Dr. Arnold to ask if she knew where his application was in the process, to which she responded that she did not know. *See*, Exhibit 9 at 3.

21. As noted above, section 3(e) of the Policy stated that "[b]y the end of the 9th long semester the faculty member shall be notified that their application for tenure has been accepted for consideration by the President or if their pre-tenure period has been extended." *See*, Exhibit 7 at 2. With the Fall 2022 semester ending on December 9, 2022, Professor Cotten again emailed Dr. Arnold, on December 5, 2022, to ask if she knew of anyone who might be notifying him regarding his tenure. *See*, Exhibit 9 at 12. She responded that she thought the notification might be an email from President Ponce but would check further. *See*, Exhibit 9 at 11. After not receiving any further information, fourteen days later, and *ten days after the end of the semester*, Professor Cotten again emailed Dr. Arnold to request an update on December 19, 2022 but did not receive a response until after the faculty had returned from the holiday break, the following calendar year. *See*, Exhibit 9 at 10.

22. Upon returning to the College, for the Spring 2023 semester, Dr. Arnold responded to Professor Cotten's December 19, 2022, email on January 3, 2023 stating she would attempt to get an answer from "Susan" regarding his application. *See*, Exhibit 9 at 10. Dr. Susan Guzman-Trevino is the Provost and Vice President for Academic Affairs

23. When he again had not heard anything by January 5, 2023, Professor Cotten emailed Dr. Arnold to see if she had received any response from her inquiry. She responded that she had not, this time with no further information on when he might expect more information or how it might come. *See*, Exhibit 9 at 8.

24. At that point, Professor Cotten felt continuing to ask Dr. Arnold for information would have diminishing returns and therefor he reached out to President Ponce to ask if she had received his tenure packet. *See*, Exhibit 9 at 6. It was only then he was told there were "reservations on granting… [his] tenure…." President Ponce then further stated that his "department and division have asked for an extension to evaluate… [his] performance over the next few months." *See*, id.

25. This was surprising to Professor Cotten. Despite having prepared and taught his assigned classes for several years, Professor Cotten had not previously been informed there was a problem with his teaching style or student enrollment and passing rates. In fact, in addition to his generally positive regular reviews, until that time he had received emails with statements such as:

> "Mr. Roth, Legacy Early College High School Principal came by this morning and wanted to express his gratitude to Mr. Michael Cotten on preparing his students so well for the US History STAAR exam. 100 percent of their juniors passed the exam; 84% met expectations and 54% mastered the subject.
>
> Thank you, Mr. Cotten, for your hard work and dedication to our students."

*See*, Exhibit 10, STARR Exam Email, a true and correct copy of which is attached and incorporated herein by reference. And:

> "I am very thankful for having you in my first year TC because your class really showed me that I can accomplish and be successful anything I set my mind to."

*See*, Exhibit 11, Student Email, a true and correct copy of which is attached and incorporated herein by reference.

26. In addition, President Ponce told Professor Cotten that she would not disclose what the reservations were but that he would soon have a meeting with his Department Chair and Dean at which point that information would be told to him.  It was only on, or about, January 11, 2023, at the meeting with his department chair, Dr. Jamie Arnold, and the Liberal Arts Dean, John Stevens, that Professor Cotten was informed what those reservations were.  Many of the discussed reservations appeared to concern the rigor of his classes and the number of students successfully completing his classes, including those from the Taylor ISD programs.  Despite the poor way the disclosure of these reservations was handled, in the report submitted by either Dr. Arnold or Dean Stevens, it was noted that:

> Professor Cotten received the criticism with a spirit of humility and cooperation. He offered changes he plans to make regarding the structure of his classes and his communication with members of the Temple College community. He expressed a strong desire to improve to restore the trust and confidence of the administration, and to reduce any reservations one might have regarding tenure.

*See*, Exhibit 12, Meeting Memo, a true and correct copy of which is attached and incorporated herein by reference.

27. After the meeting, over the course of several emails, Dr. Arnold reassured Professor Cotten that she had scheduled him to teach classes in the coming year several times—including an email she sent to Professor Cotten on February 22, 2023, with a list of the classes she had him scheduled to teach in the fall.  *See*, Exhibit 9 at 17.  Later, in an email dated February 23, 2023, Dr. Arnold again said, "I plan on you teaching for us next year."  *See*, Exhibit 9 at 15.  And, a week after that, on March 2, 2023, she stated, "…you can plan on a contract next year."  *See*, Exhibit 9 at 19.

28. Notwithstanding those ongoing assurances, Professor Cotten was notified on, or about, April 6, 2023, that his contract was not being renewed. *See*, Exhibit 13, Non-renewal Letter, a true and correct copy of which is attached and incorporated herein by reference. This was well after the February 1st deadline for informing him that his contract would not be renewed per the Policy. *See*, Exhibit 7 at 1.

29. When Professor Cotten appealed the non-renewal, he was told the non-renewal was due to (1) disrespectful communications he allegedly made to staff and students; (2) allegedly racist comments he made while teaching; (3) high numbers of students withdrawing or not successfully completing his classes; and (4) that he was "demanding a quicker resolution." *See*, Exhibit 14, Non-renewal Memorandum and Supporting Email, a true and correct copy of which is attached and incorporated herein by reference. However, the emails used to illustrate disrespect were professional; the terms complained of as being racist were taken directly from the textbook provided to Professor Cotten by the College; and the administration had not previously spoken with him regarding the number of students dropping his class, had not worked with him to ensure his classes were not significantly more rigorous than those of his colleagues, and had renewed the contracts of other professors whose successful completion numbers varied similarly to his.

30. Professor Cotten appealed the non-renewal and a hearing was held on, or about, May 30, 2023. At that hearing, Professor Cotten noted that Dr. Arnold's signature page was missing from his tenure packet, despite her having emailed him that she had signed it. No explanation was given for this discrepancy when he asked about it. There was also no responsive explanation given for the lack of negative feedback in the previous reviews of his teaching.

31. On June 8, 2023 Professor Cotten appealed the decision and on June 20, 2023 that appeal was decided upon by President Ponce—the same person who had made the original decision not to recommend him for tenure to the Board of Trustees. Unsurprisingly, she upheld her own decision.

32. On July 15, 2023 Professor Cotten appealed that decision to the Board of Trustees. They held a meeting to decide the appeal on September 18, 2023. And on September 21, 2023, they denied Professor Cotten's grievance.

33. Professor Cotten is more than 50 years old. Almost as soon as Professor Cotten's contract was not renewed the College hired a new professor to replace him. Upon information and belief, several people who were older than 40 were interviewed for the position; however, the individual ultimately hired to replace Professor Cotten is younger than 40 years old.

34. The spurious excuses for denying Professor Cotten's tenure and not renewing his contract, and the intentional hiring of someone younger than 40 suggests there was an underlying motive or intent to hire younger faculty.

## V.      FIRST CAUSE OF ACTION: SUBSTANTIVE DUE PROCESS
### *U.S. Const. am 5 & 14*

35. Plaintiff incorporates, by reference, each and every preceding paragraph as if fully restated herein.

36. There are two types of due process—procedural and substantive. Here, Professor Cotten would generally have had no claim to substantive due process, as this circuit has held that tenure-track professors have no property interest in their continued employment. See, *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992).

37. In addition, Texas Education Code §51.943(c) usually undermines an educational institution's obligation to provide an annual contract to tenure-track faculty.

38. However, Professor Cotten's department chair, Dr. Arnold made multiple written assurances of a continuing contract to him.  Dr. Arnold also emailed Professor Cotten to tell him a list of the classes she anticipated he would be teaching.  These repeated written communications, from his Department Chair, made it reasonable for Professor Cotten to rely on the continuation of his contract for at least one additional year.  See, *Mallek v. City of San Benito*, 121 F.3d 993, 998 (5th Cir. 1997).  The reasonableness of Professor Cotten's reliance is especially true as the Policy would have required that Professor Cotten be notified by February 1st if the College was not renewing his contract for the following year.

39. Accordingly, Defendants are liable to Professor Cotten pursuant to 42 U.S.C. § 1983 for their deprivation of Professor Cotten's constitutional rights to substantive due process and for damaging him as alleged herein and below.

40. Pursuant to 42 U.S.C. § 1988, Professor Cotten is entitled to his attorney's fees incurred in bringing this action.

## VI.     SECOND CAUSE OF ACTION: PROCEDURAL DUE PROCESS
### U.S. Const. am 5 & 14

41. Procedural due process rights may apply if, when declining to renew a contract, Defendants make charges that "might seriously damage his standing and associations in his community…. For "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." See, *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701, 2707 (1972)  (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 510 (1971)).

**A.  No Meaningful Investigation or Hearing of Allegations Against Professor Cotten**

42. Plaintiff incorporates, by reference, each and every preceding paragraph as if fully restated herein.

43. Plaintiff has a protected liberty interest in his future employment opportunities, whether with Temple College or other academic institutions and employers.

44. At all times relevant hereto, as a tenure-track professor, and someone who intends to have a continuing career in academia, Professor Cotten has had an interest in his reputation for knowledge of the subject, for interacting with other university staff and students in a professional manner (and without the use of racial slurs), for accurate and fair grading, and for integrity.

45. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

46. 42 U.S.C. § 1983 provides a private right of action for lawsuits seeking equitable relief against State agents acting in their official capacity.

47. In "limited circumstances, a state's decision not to rehire an individual would be subject to procedural due process constraints" See, *Udeigwe v. Tex. Tech Univ.*, 733 F. App'x 788, 793 (5th Cir. 2018).

48. By basing the non-renewal on alleged racist comments and disrespectful actions, the College, by and through its employees, President Ponce, Dean Stevens, and Dr. Arnold, impugned Professor Cotten's reputation and integrity.

49. Professor Cotten was entitled to a meaningful opportunity to be heard regarding the allegations against him but was not afforded such a chance prior to the decision not to grant tenure and not to renew his contract.

50. Professor Cotten has a significant interest in remedying an adverse decision against him based on a denial of due process protections.

51. Defendants knew, or should have known, that Professor Cotten has a clearly established right to due process protections and a reasonable person. This is especially true for established college administrators such as Defendants, President Ponce, Dean Stevens, and Dr. Arnold.

52. College administrators such as Defendants, President Ponce, Dean Stevens, and Dr. Arnold also knew, or should have known, that failing to apply those standards of review would violate Professor Cotten's due process rights.

53. However, despite this, Defendant, Temple College established a system for due process by creating the Policy and Defendants, President Ponce, Dean Stevens, and Dr. Arnold, then ignored that Policy when it became inconvenient for them to follow it.

54. Defendants, acting in their individual and official capacities, at all relevant times herein, including, but not limited to, their words and actions regarding the tenure denial and non-renewal of contract decision, deprived Professor Cotten of his constitutionally established property right to his ongoing employment by applying a different standard in the denial of his tenure, and the non-renewal of his contract, than is applied to others and otherwise as alleged herein.

55. Defendants' tenure denial and the non-renewal of Professor Cotten's contract simply has not met the requirements of due process. Defendants failed to follow their policies when evaluating Professor Cotten's tenure packet. Further, they failed to provide Professor Cotten notice of all allegations against him in a timely manner. Additionally, they failed to provide Professor Cotten an opportunity to respond to the same prior to the decision not to renew his contract.

As a result, Professor Cotten's ability to adequately respond to the charges against him was unconstitutionally compromised.

56. The Defendants have violated Professor Cotten's due process rights in the following manner:

   a.  The Defendants did not undertake a full, fair, and impartial investigation of the allegations of the allegations made against him regarding the use of racist language.

   b.  The Defendants did not employ any evidentiary standard when evaluating the charges of racial bias.

**B.      Disregard of the Policy by the Defendants**

57. Plaintiff incorporates, by reference, each and every preceding paragraph as if fully restated herein.

58. There were multiple deviations from the Policy when Professor Cotten's tenure and contract renewal were decided upon.

59. The Policy stated specific timelines for the evaluation of a tenure review application. The Defendants ignored those deadlines multiple times without apparent reason or explanation to Professor Cotten.

60. The Policy also stated that "Faculty members who do not apply for tenure *by the deadlines specified below*… will be given a notice of non-renewal of contract." *See*, Exhibit 7 at 1 (emphasis original). Upon information and belief, had Professor Cotten disregarded the Policy's date for submission of his application for tenure the College would have issued such a notice of non-renewal of contract in compliance with the Policy.

61. Although the precise requirements of procedural due process in the context of university action require case-by-case analysis, a neutral evaluator is always essential.

62. The initial decision not to grant tenure or renew Professor Cotten's contract appears to have come from President Ponce.

63. The appeal of that decision was heard by Vice President of Administrative Services who, according to the Temple College Organization Chart, is a subordinate to President Ponce. As a subordinate it is likely they would feel uncomfortable overruling her decision. *See*, Exhibit 15, Temple College Organizational Chart, a true and correct copy of which is attached and incorporated herein by reference.

64. President Ponce failed to follow the Procedure for Tenure Approval.

65. This failure to follow the Policy was ignored multiple times and in multiple ways.

66. As a result of the above-outlined deprivations, Professor Cotten has suffered harm.

67. At all relevant times, Defendants, in their individual and official capacities, were executing official college policy by making decisions and committing acts depriving Plaintiff of his constitutional rights, by representing the official policy of the College, by ignoring requirements within the Policy and then improperly denying Professor Cotten's tenure and subsequently further failing to renew his contract.

68. Throughout the non-renewal of contract appeal process Professor Cotten repeatedly asked if the Defendants had violated the Policy. His questions were not answered and were repeatedly brushed off with deliberate indifference.

69. Accordingly, Defendants are liable to Professor Cotten pursuant to 42 U.S.C. § 1983 for their deprivation of Professor Cotten's constitutional rights to procedural due process and for damaging him as alleged herein and below.

70. Pursuant to 42 U.S.C. § 1988, Professor Cotten is entitled to his attorney's fees incurred in bringing this action.

## VII. THIRD CAUSE OF ACTION: AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)
### *29 U.S.C. §621, 42 U.S.C. §§ 6101-6107, & 42 U.S.C. § 2000e-5(f), et seq.*

71. Plaintiff incorporates, by reference, each and every preceding paragraph as if fully restated herein.

72. Plaintiff has exhausted the federal remedies in this cause by filing a complaint with the Equal Employment Opportunity Commission (hereinafter, the "EEOC") regarding the Defendants' alleged discriminatory conduct. The EEOC issued a Determination and Notice of Rights letter, which Plaintiff received on February 2, 2024. *See*, Exhibit 16, Determination and Notice of Rights.

73. Under the ADEA it is illegal to "…discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" *See*, 29 U.S.C. § 623(a)(1).

74. "A plaintiff bringing an ADEA claim 'must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" See, *Bellard v. JPS Health Network*, 439 F. App'x 392, 394 (5th Cir. 2011) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009)).

75. The process to replace Professor Cotten appears to have occurred more rapidly than customary, with the new professor being in place less than a month after Professor Cotten received notice of the non-renewal of his contract and more than a month prior to his first appeal of that decision.

76. Professor Cotten is more than 50 years old.

77. Upon information and belief, Temple College interviewed several people older than 40 years.

78. However, upon information and belief, the individual hired to replace Professor Cotten was younger than 40 years old.

79. Upon information and belief, the previously described violation of Professor Cotten's rights to due process were an attempt to rush through the denial of his tenure and subsequent non-renewal of his contract.

80. Upon information and belief, the College was interested in hiring a younger Professor who would be willing to relax the academic standards for the classes.

81. Accordingly, Defendants are liable to Professor Cotten pursuant to 42 U.S.C. § 1983 for their deprivation of Professor Cotten's constitutional rights and damaging him as alleged herein and below.

82. Pursuant to 42 U.S.C. § 1988, Professor Cotten is entitled to his attorney's fees incurred in bringing this action.

## VII.   FOURTH CAUSE OF ACTION: VIOLATION OF FIRST AMENDMENT FREE SPEECH RIGHTS
### *U.S. Const. am 1*

83. Plaintiff incorporates, by reference, each and every preceding paragraph as if fully restated herein.

84. It has long been held that "the First Amendment prohibits a public employer from retaliating against an employee for exercising his right to speak on a matter of public concern." See, *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994). Likewise, Article 1. §§8, 27 of the Texas Constitution also provides for the protection of free speech.

85. As stated previously, Professor Cotten was an instructor in the History Department at the College. Accurately teaching historical events is a matter of public concern—even if those

events, or the descriptions of them, do not conform to modern ideals. As such, it was Professor Cotten's duty to teach topics that may have made students, or other faculty, uncomfortable. Likewise, it was Professor Cotten's duty to occasionally use historically accurate language that students, or other faculty, found "racist" using modern mores.

86. Professor Cotten's use of such language was not personally motivated, but rather motivated by an interest in doing the best job he could at teaching the topics he was hired by Temple College to instruct.

87. By denying Professor Cotten's tenure, and subsequently not renewing his contract, the Defendants have caused Professor Cotten to suffer an adverse employment decision.

88. Accordingly, Defendants are liable to Professor Cotten pursuant to 42 U.S.C. § 1983 for their deprivation of Professor Cotten's constitutional rights and damaging him as alleged herein and below.

89. Pursuant to 42 U.S.C. § 1988, Professor Cotten is entitled to his attorney's fees incurred in bringing this action.

### IX.     RELIEF SOUGHT

90. Plaintiff incorporates, by reference, each and every preceding paragraph as if fully restated herein.

91. In light of the above-described facts, Plaintiff seeks recovery from Defendants of any applicable compensatory damages.

92. In light of the above-described facts, Plaintiff seeks recovery from Defendants by the payment of the wages and benefits, such as health care and retirement benefits, he would have been entitled to had he remained employed.

93. In light of the above-described facts, Plaintiff seeks recovery from Defendants of reinstatement and conferral of tenure.

94. In light of the above-described facts, Plaintiff seeks recovery from Defendants an award of interest, costs, reasonable attorney's fees, and expert witness fees.

95. Professor Cotten seeks to protect and enforce his statutory and constitutional rights as guaranteed by the U.S. Constitution as well as other federal laws.

## X.     ATTORNEYS FEES

96. Plaintiff incorporates, by reference, each and every preceding paragraph as if fully restated herein.

97. Pursuant to 42 U.S.C. § 2000e-5(k) and Section 37.009 of the Texas Civil Practice and Remedies Code, request is made for all costs and reasonable and necessary attorney's fees incurred by Plaintiff herein, including all fees necessary in the event of an appeal of this cause, as the Court deems equitable and just.

## XI.     PRAYER FOR RELIEF

WHEREFOR, PREMISES CONSIDERED, Plaintiff, Michael Cotten, respectfully requests that the Defendants be cited to appear and answer herein, and demands judgment against Defendants as follows:

a.   Compensatory damages in whatever amount Professor Cotten is found to be entitled;

b.   Back Pay and all Back Benefits, including, but not limited to health care and retirement;

c.   Reinstatement and conferral of tenure;

d.   An award of interest, costs, reasonable attorney's fees, and expert witness fees;

e.   All other relief at equity or law which is appropriate at the time of judgment.

Respectfully submitted,
DAVID K. SERGI AND ASSOCIATES, P.C.

By: */s/ David K. Sergi*

**David K. Sergi**—Attorney in Charge
State Bar No: 18036000
david@sergilaw.com
Jessica L. Cousineau
OSB No. 012374
jessica@sergilaw.com
329 S Guadalupe Street
San Marcos, TX 78666
Phone: (512) 392-5010
Fax: (512) 392-5042
COUNSEL FOR PLAINTIFF, MICHAEL
COTTEN